IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

LINDA SUE HILL,                      )
                                     )
         Plaintiff,              )
                                     )
vs.                                  )   Case No. CIV-05-0548-F
                                     )
GREEN BAY PACKAGING,                 )
INC.,                                )
                                     )
         Defendant.              )

## MEMORANDUM OPINION AND ORDER

Before the court is defendant's Motion for Summary Judgment. Plaintiff filed a response and a supplement to her response. Defendant then filed a response in opposition to plaintiff's supplement. These matters are now at issue.

## I. BACKGROUND

Plaintiff was employed by defendant at its Chickasha facility as a customer service representative. In that position, plaintiff was responsible for processing customer orders and performing sales support work inside the Chickasha division office. On March 18, 2004, plaintiff approached the General Manager, Mr. Gromer, raising complaints of sexual harassment by Mr. Latham. At the time of plaintiff's complaint, Mr. Latham was the sales manager for defendant and was plaintiff's direct supervisor. Plaintiff asserted that Mr. Latham had engaged in the following conduct: In mid-2003, he was standing behind her and popped her bra strap; after that incident, Mr. Latham pinched plaintiff on the buttock; following the pinching incident, Mr. Latham and plaintiff arrived at a restaurant for a business meeting and Mr. Latham

suggested to Ms. Hill that they have a few drinks and get a room; in mid-February of 2004, plaintiff returned to her desk from a break and Mr. Latham was sitting in plaintiff's chair and patted his lap, suggesting she sit there; and, during the week of March 8, 2004, plaintiff was made uncomfortable by Mr. Latham when he would approach her and stand very close to her while she was sitting at her desk. In addition to these incidents, plaintiff noted that Mr. Latham had made periodic off-color remarks of a sexual nature. For example, Mr. Latham commented to plaintiff that his wife would no longer "put out;" that he liked one of the female customer service representatives in the Tulsa office because she had "big boobs;" when a woman was walking by, Mr. Latham stated, "I'd like to jump that one." Finally, plaintiff complained that Mr. Latham made other sexually explicit comments and jokes on at least an every-other-week basis.

Following plaintiff's complaints, Mr. Gromer initiated an "investigation." Ultimately, Mr. Gromer decided to discipline Mr. Latham by "demoting" him to the position of sales representative. Following the demotion, plaintiff continued to work on client files with Mr. Latham. In August of 2004, plaintiff was demoted to the position of receptionist. Defendant argues the demotion was made to reduce tension among the sales staff. Shortly after the demotion, plaintiff was notified that her pay would be reduced by approximately $4.00 per hour. Plaintiff then resigned her position.

Following her resignation, plaintiff filed a formal charge with the EEOC. Upon receipt of her Notice of Rights, plaintiff filed the present action alleging violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, asserting the existence of a hostile work environment. In addition, plaintiff asserts that her demotion and subsequent constructive discharge were in retaliation for her complaints regarding a

hostile work environment. Finally, plaintiff raises a state law tort claim for negligent hiring/retention.

Defendant filed the present motion, asserting that the undisputed material facts demonstrate that there was no hostile work environment; that plaintiff voluntarily resigned her employment; and that plaintiff can demonstrate no negligence in defendant's actions and therefore her state law claims must also fail.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977).  The movant bears the initial burden of demonstrating the absence of a dispute as to a fact essential to the nonmovant's claim, requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant.  Fed. R. Civ. P. 56(e).  These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324.  Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992).  "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d

Case 5:05-cv-00548-F   Document 66   Filed 06/09/06   Page 4 of 15

664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. DISCUSSION

A. Hostile Environment Claim

Defendant argues that plaintiff's hostile work environment claim cannot survive summary judgment because no rational jury could find that her workplace was permeated with discriminatory intimidation, ridicule, and insult that was sufficiently severe or pervasive as to have altered the conditions of her employment and created an abusive working environment.

Plaintiff argues that defendant concedes that all elements of a prima facie case are met, other than whether the harassment was sufficiently severe or pervasive. According to plaintiff, when the court examines the totality of the circumstances, including the frequency of the conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with plaintiff's work performance, it is clear that Mr. Latham's conduct was sufficiently severe or pervasive. Defendant's argument is indeed focused on the quantity of conduct. In this regard, defendant's analysis fails all parts of the inquiry. The Supreme Court has made clear that "the frequency of the discriminatory conduct" is simply one factor in the analysis, and no single factor is required. Harris v. Forklift Sys., Inc., 510 U.S. 17, 22 (1993), and that a hostile work environment can be established if the conduct is sufficiently severe **or** pervasive. Meritor Sav. Bank, F.S.B. v. Vinson, 477 U.S. 57, 67 (1986) (emphasis added). Indeed, in Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1072 (10th Cir. 1998), the Tenth Circuit found actionable a hostile environment claim wherein the abusive environment was created by a single incident. Thus, plaintiff's claim cannot be evaluated merely on the number of incidents by Mr. Latham. Rather,

that frequency must be considered along with the severity of Mr. Latham's conduct and its effect on plaintiff.  See Davis v. U.S. Postal Service, 142 F.3d 1334, 1341 (10th Cir.1998):

> In order for a hostile work environment sexual harassment claim to withstand judgment as a matter of law, a plaintiff must show that a rational jury could find that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) (quoting Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 65, 67, 106 S.Ct. 2399, 2404-05, 91 L.Ed.2d 49 (1986)).

In addition plaintiff "must show that the environment would be reasonably perceived (objectively), and is perceived (subjectively), as hostile or abusive." Nieto v. Kapoor, 268 F.3d 1208, 1220 (10th Cir. 2001).  In evaluating the evidence, the court is mindful of the Tenth Circuit's admonition in O'Shea v. Yellow Tech. Servs., Inc., 185 F.3d 1093, 1098 (10th Cir. 1999), that the severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is "quintessentially a question of fact" (citation omitted).

Here, the court is persuaded that the evidence presented by plaintiff, if credited by the jury, would demonstrate that Mr. Latham's conduct was severe and directed at plaintiff due to her gender.  Clearly, a reasonable jury could find that Mr. Latham's actions of popping plaintiff's bra strap, suggesting she sit in his lap, pinching her on the buttocks, when considered along with the sexually explicit comments identified by plaintiff, would be sufficient to alter the working conditions of a reasonable person in plaintiff's position.  Further, plaintiff has provided evidence which, if believed by the jury, would establish that Mr. Latham's actions did in fact alter her working conditions.  Thus, plaintiff has satisfied the subjective component.  Moreover, Mr.

Gromer and Mr. Latham both acknowledged that they would find Mr. Latham's conduct to be objectionable if it had been directed at their spouses thereby providing evidence from which a rational jury could find the objective component is met.

B.  The Affirmative Defense

Defendant argues that, in the event the court finds questions of fact remain regarding the existence of a hostile environment, it is still entitled to judgment on those claims based on the affirmative defense created in the companion cases of Faragher v. City of Boca Raton, 524 U.S. 775 (1998), and Burlington Indus. v. Ellerth, 524 U.S. 742 (1998), because it took prompt corrective action once plaintiff complained.  Defendant argues that the affirmative defense, if established, permits an employer to avoid liability for hostile work environment created by a supervisor if the employer exercised reasonable care to prevent the harassment in the first place, promptly corrected any sexually harassing behavior, and the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer.   Plaintiff argues that the affirmative defense is unavailable to defendant because she suffered a tangible employment action.  According to plaintiff, she was reprimanded, demoted, and finally constructively discharged as a result of her complaints to Mr. Gromer of Mr. Latham's abusive conduct.

The first question that must be answered is whether plaintiff suffered a tangible employment action.  If she did, then defendant may not rely on the affirmative defense.  Faragher, 524 U.S. at 808 ("No affirmative defense is available, however, when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.") (citing Burlington, 524 U.S., at 762-763).

In response to plaintiff's complaints about Mr. Latham, Mr. Gromer "demoted" him to sales representative.  However, plaintiff has presented evidence which, if

believed by the jury, would establish that Mr. Latham's alleged demotion was in name only.  Indeed, the evidence presented by plaintiff would establish that even after the demotion plaintiff continued to report to Mr. Latham and he continued to monitor her performance.  Indeed, Mr. Latham complained about plaintiff's performance to Mr. Gromer.  Viewed in the light most favorable to plaintiff, there is evidence before the court which, if credited, would establish that based on Mr. Latham's complaints as well as other related issues, plaintiff was demoted to the position of receptionist effective August 11, 2004.

Defendant argues that the demotion was to reduce the tension among the sales staff caused by plaintiff's interaction with Mr. Scott and because plaintiff was making a number of mistakes which threatened the continuation of contracts between defendant and certain of its customers.  Plaintiff has presented evidence raising substantial questions about the validity of defendant's reasons for the demotion.  Indeed, the evidence presented by plaintiff, when viewed in the light most favorable to her, would establish that at least part of the basis for plaintiff's demotion was her complaints about Mr. Latham's harassing behavior.  (See Dkt. 46, Exh. 23, where Mr. Gromer notes a desire to "put the events of previous weeks and months behind us" and following page noting reason for demotion was "to reduce tension in the office by eliminating direct contact between [plaintiff] and the sales staff.")  Thus, plaintiff has produced facts which a reasonable jury could find establish that tangible employment action was taken by defendant.  Accordingly, the affirmative defense is unavailable to defendant.

C.  Retaliation

Defendant argues that plaintiff cannot establish a prima facie case of retaliation because she lacks evidence supporting a causal connection between the protected activity and the adverse employment action.  Defendant argues that because there was

a five-month delay between plaintiff's complaints of Mr. Latham's conduct and her subsequent demotion plaintiff has failed to demonstrate adequate temporal proximity and therefore her claim must fail. In support of its position, defendant cites MacKenzie v. City & County of Denver, 414 F.3d 1266, 1280 (10th Cir. 2005). In the alternative, defendant argues that regardless of timing issues, because it had a legitimate non-retaliatory reason for its actions regarding plaintiff, it is entitled to judgment on plaintiff's retaliation claims. According to defendant, the decision to move plaintiff from customer sales representative to receptionist was based upon a complaint from Western Industries, Inc., plaintiff's failure to properly process orders for Hiland Dairy, and plaintiff's failure to properly process an urgent order for Budget Box. Defendant also points to a confrontation between plaintiff and Mr. Scott, regarding Mr. Scott's recent promotion to sales representative. Defendant argues that as a result of the customer complaints and the incident involving Mr. Scott, Mr. Gromer elected to hold a meeting with plaintiff, Mr. Burris, who was acting as the temporary supervisor of the customer service representatives, and plaintiff's husband. During the meeting, Mr. Gromer asked that all persons present make an effort to reduce the existing tensions and specifically requested plaintiff to reduce the number of mistakes. The meeting was held on July 23, 2004. According to defendant, plaintiff's mistakes continued and the tensions remained high. Therefore, on August 11, 2004, based on the recommendations of Mr. Nelson and Ms. Van Dyck, Mr. Gromer decided to demote plaintiff to the position of receptionist. Defendant argues that these facts provide a legitimate non-discriminatory reason for plaintiff's demotion and therefore plaintiff's retaliation claim cannot survive.

To establish a prima facie case of retaliation, plaintiff must establish that (1) she availed herself of a protected right, (2) she was adversely affected by an employment decision, and (3) there was a causal connection between the protected activity and the

adverse employment action. <u>Miller v. Automobile Club of New Mexico, Inc.</u>, 420 F.3d 1098, 1119 (10th Cir. 2005), <u>MacKenzie</u>, 414 F.3d at 1278-79. As noted above, defendant's only challenge to plaintiff's prima facie case is its assertion that plaintiff has failed to demonstrate a causal connection. Defendant bases its argument on the length of time between plaintiff's complaint and the alleged adverse employment action. According to defendant, because a five-month period of time elapsed, plaintiff cannot establish a connection.

Defendant misconceives the importance of the temporal connection. The Tenth Circuit has stated that unless the termination is very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond temporal proximity to establish causation. <u>Conner v. Schnuck Markets, Inc.</u>, 121 F.3d 1390, 1395 (10th Cir. 1997).

Here, when viewed in the light most favorable to plaintiff, such evidence is present. As noted above, Mr. Gromer's notes from the meeting which led to plaintiff's demotion noted a connection between that meeting and plaintiff's claims against Mr. Latham. Further, plaintiff has offered evidence which, if credited, would demonstrate that the severity of the customer complaints was exaggerated and not unusual. Finally, the fact that at least some of the grounds for Mr. Gromer's decision to meet with plaintiff and ultimately to demote her arose from complaints by Mr. Latham, a reasonable jury could find that the complaints arose from a desire to strike back at plaintiff due to her hostile environment assertions. Plaintiff has presented evidence from which a reasonable jury could find a connection between her complaints and the adverse employment actions even in light of the extended time period.

Turning to the remaining elements of the prima facie case, plaintiff has demonstrated the existence of disputed material facts. Plaintiff notes that defendant's

customer complaints are unsubstantiated.  According to plaintiff, the Western Industries complaint said nothing about the necessity to remove plaintiff from the contract and rather conveys a miscommunication issue regarding its account. Plaintiff also notes that at his deposition, Mr. Gromer could not identify any specific issues concerning Budget Box or the other customer and that Mr. Gromer's notes from the July 23rd meeting suggest the purpose of the meeting was to address the tension that existed in the office.  Indeed, a reasonable jury could find that Mr. Gromer's notes actually support plaintiff's position.  As noted above, Mr. Gromer's notes can be read to relate to plaintiff's complaints about Mr. Latham.  Thus, a reasonable jury could find that Mr. Gromer recognized that some of the tension arose from plaintiff's hostile work environment complaints and demoted her in response to those complaints.  This is a matter for the jury to resolve.

Following the demotion, plaintiff's pay was reduced.  Defendant asserts the reduction was based on plaintiff's continued uncooperative attitude following her demotion to receptionist.  However, the Payroll Transfer and/or Promotion Termination Retirement Form prepared by defendant at the time of plaintiff's demotion to receptionist noted that plaintiff's pay rate would remain the same **only** through the next payroll period and that it would then be adjusted to reflect appropriate pay for the position at the start of the new pay period.  See Plaintiff's Exhibit 24.  In addition, plaintiff notes that she began a vacation within a matter of days of starting in the receptionist position and worked only a maximum of four days before being informed that her pay would be cut.  Thus, plaintiff argues, she worked for Ms. Van Dyck for no more than eight days total before the pay cut allegedly based upon her uncooperative attitude was suggested to Mr. Gromer.  Consequently, a reasonable jury could find that plaintiff's demotion and subsequent pay reduction were retaliatory acts.

D.  Constructive Discharge

Defendant challenges whether plaintiff has demonstrated a viable constructive discharge claim.  According to defendant, plaintiff resigned of her own free will and therefore cannot state a constructive discharge claim.

Initially the court notes that it is not clear that plaintiff is pursuing a constructive discharge claim apart from her retaliation claim.  Rather, it appears from the pleadings in this case and the arguments raised in plaintiff's response brief that the constructive discharge claim is pursued as a part of the retaliation claim to establish an adverse employment action.  Regardless, the matter must be resolved.

> A constructive discharge occurs when a reasonable person in the employee's position would view her working conditions as intolerable and would feel that she had no other choice but to quit.  See Heno [v. Sprint/United Management Co.], 208 F.3d [847] at 858 [(10th Cir. 2000)];Woodward v. City of Worland, 977 F.2d 1392, 1401 (10th Cir. 1992). In determining whether an employee's working conditions would cause such feelings in a reasonable person, we apply an objective test under which neither the employee's subjective views of the situation, nor her employer's subjective intent with regard to discharging her, are relevant.  See Jeffries v. Kansas, 147 F.3d 1220, 1233 (10th Cir. 1998). The question is not whether the employee's resignation resulted from the employer's actions, but whether the employee had any other reasonable choice but to resign in light of those actions.  See id.

Tran v. Trustees of State Colleges in Colorado, 355 F.3d 1263, 1270 (10th Cir. 2004).

Thus, the question is whether a reasonable person in plaintiff's position would feel that working in the receptionist position for the reduced rate of pay was so intolerable that the person had no choice but to quit.  The court finds plaintiff has failed to demonstrate a dispute of material fact on this issue.  Although plaintiff may have been upset about the pay reduction and the fact that she felt defendant was retaliating for her complaints, those feelings are immaterial.  Rather, the court must

11

examine the situation as it would be perceived by a reasonable person. Viewing the matter on that basis, the court concludes that no reasonable jury could find that plaintiff's new position, with the new rate of pay, was so intolerable that plaintiff had no choice but to quit. Accordingly, the court concludes that the constructive discharge claim is not viable when tested by the standards applicable under Rule 56.

E.  Negligent Hiring/Retention Claim

Defendant challenges plaintiff's state law-based negligent hiring/retention claim, arguing that there is no evidence demonstrating that it was aware of Mr. Latham's conduct prior to plaintiff's complaints.[1] In response, plaintiff argues that defendant was aware of Mr. Latham's predisposition to engage in sexually inappropriate conduct. Plaintiff points to three items which she argues were sufficient to put defendant on notice: (1) Mr. Latham's conduct in New Orleans when Mr. Gromer was present; (2) Ms. Williams report of the conduct one month prior to plaintiff's complaint; and (3) Mr. Latham's conduct on the golf course with a supplier, Ms. McDavid.

Under Oklahoma law:

> Employers may be held liable for negligence in hiring, supervising or retaining an employee. In such instances, recovery is sought for the employer's negligence. The claim is based on an employee's harm to a third party through employment. An employer is found liable, if–at the critical time of the tortious incident–, the employer had reason to believe that the person would create an undue risk of harm to others. Employers are held liable for their prior knowledge of the servant's propensity to commit the very harm for which damages are sought.

---

[1] Defendant does not assert that Mr. Latham was acting in the course and scope of his employment during his interaction with Plaintiff. Thus, there is no question that plaintiff's claims are not based on vicarious liability. This fact is important as a negligent retention claim cannot be pursued where vicarious liability exists. See Johnson v. Dillard's, Inc., No. CIV-05-29-F, 2005 WL 2372153 (W.D. Okla. Sept. 27, 2005).

N.H. v. Presbyterian Church (U.S.A.), 998 P.2d 592, 600 (Okla. 1999) (footnotes omitted).  Here, the issue is whether or not a reasonable jury could find that defendant had a reason to believe that Mr. Latham posed an undue risk of sexual harassment *before* he began harassing plaintiff.  After consideration of plaintiff's evidence, it is clear no reasonable jury could find defendant knew or should have known of the potential harm.

Plaintiff first points to Mr. Latham's alleged conduct in New Orleans.  In support of this allegation plaintiff cites her deposition testimony as well as that of Mr. Latham and Mr. Gromer.  Plaintiff's testimony about the incident is inadmissible hearsay.  She describes the incident based on what she was told by a third party who may or may not have been present.  Thus, plaintiff's testimony is insufficient to defeat defendant's motion.  Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) ("Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill.) (citations omitted).  Mr. Latham and Mr. Gromer denied that anything happened in New Orleans.  Thus, that incident may not be relied on to put defendant on notice.

Plaintiff also relies on an incident at a golf course where Mr. Latham allegedly groped Ms. McDavid.  Plaintiff cites her deposition, the depositions of Mr. Latham and Mr. Gromer, and Mr. Ward's affidavit.  Once again the evidence offered by plaintiff is insufficient to defeat defendant's motion.  The testimony of plaintiff and Mr. Gromer on the issue is inadmissible hearsay.  Even if admissible, Mr. Gromer's testimony clearly establishes his understanding that the conduct was consensual.  Mr. Ward's affidavit also makes clear that the conduct was consensual and bilateral, as does Mr. Latham's testimony.  Attached to its response to plaintiff's supplemental brief, defendant provided an affidavit from Ms. McDavid wherein she avows that Mr.

Latham's conduct was in no way inappropriate. Thus, the golf course incident could not be found to have put defendant on notice of Mr. Latham's predisposition.

Finally, plaintiff argues that she complained about Mr. Latham to Ms. Williams, a co-worker. According to plaintiff, Ms. Williams reported the issue to Mr. Burris who then allegedly reported to Mr. Gromer. Ms. Williams' deposition testimony is clear that her report to Mr. Burris came after Mr. Latham's conduct toward plaintiff had begun. Thus, that report cannot be found to provide defendant with prior knowledge. Consequently, plaintiff has failed to demonstrate a fact issue regarding defendant's awareness of Mr. Latham's potential misconduct before the alleged harm to plaintiff occurred. Accordingly, defendant is entitled to judgment on plaintiff's state law-based negligent hiring/retention claim.

## IV. CONCLUSION

As set forth more fully herein, questions of material fact remain regarding plaintiff's 42 U.S.C. § 2000e, claims which assert the existence of a hostile work environment and retaliatory conduct. One matter deserves emphasis, notwithstanding the court's denial, in part, of the motion for summary judgment. The evidentiary record before the court, although raising fact issues sufficient to get plaintiff past a motion for summary judgment as to some of her claims, also indicates to the court a significant possibility that a jury could conclude that plaintiff gave her supervisors and fellow employees fits for reasons only loosely connected (if connected at all) to the matters of which she complains in this case. There is in the record plausible testimony from supervisors (such as Cindy Van Dyck) having no obvious reason to be biased in their accounts, which, if believed, would be very damaging, if not fatal, to some or all of plaintiff's claims. For these reasons, it is especially important that all parties be mindful that, to the extent that the present motion is denied, it is denied only because of the stringent standard to which the court must adhere under Rule 56.

As has been noted, the undisputed material facts establish that plaintiff cannot prevail on her state law-based negligent hiring/retention claim. Defendant's Motion for Summary Judgment (Dkt. No. 37) is accordingly **GRANTED in part** and **DENIED in part**.

IT IS SO ORDERED this 9th day of June, 2006.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-0548p019(pub).wpd